UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TREMAIN HOGAN, | : | Case No. 3:23-cv-226 |
| Plaintiff, | : | |
| vs. | : | Judge Michael J. Newman |
| | : | Magistrate Judge Stephanie K. Bowman |
| ANNETTE CHAMBERS SMITH (DIRECTOR), *et al.*, | : | |
| Defendants. | : | |

**ORDER and**
**REPORT AND RECOMMENDATION**

Tremain Hogan recently submitted a pro se civil rights Complaint and related documents to this Court. Plaintiff Hogan is currently in custody at the MonDay Community Correctional Institution. (Doc. 1, PageID 2, 6). He sues four officials affiliated with the Ohio Department of Rehabilitation and Correction (ODRC) and its Adult Parole Authority (APA), alleging that a classification imposed on him by the APA violates, or has led to violations of, his rights since his formal release from prison. (Doc. 1-3, PageID 10, 12-15).

The matter is currently before the Court for the required screening of the Complaint (Doc. 1-3) and for consideration of the accompanying Petition for Injunctive Relief (Doc. 1-5). The Undersigned concludes that Plaintiff's Fourteenth Amendment claims should proceed to further development, with two limitations. The Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's Petition for Injunctive Relief at this time.

I.     **Initial Screening Standard**

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required

to conduct an initial screening of his Complaint. 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d

2

712, 716 (6th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

**II.     Parties and Claims**

Plaintiff Hogan appears to be in the custody of the ODRC at MonDay Community Correctional Institution, a "community based correctional facility." (Doc. 1, PageID 2, 6). *See Kemps v. Monday Cmty. Corr. Inst.*, 2d Dist. Montgomery No. 29751, 2023-Ohio-2797, ¶ 10 (Aug. 11, 2023) (noting that MonDay is "a community-based correctional facility that was formed pursuant to [Ohio Revised Code] 2301.51."). Plaintiff refers to himself as a "parolee," a "releasee," and "under supervision," but his exact status is not made clear in the Complaint. (*See, e.g.,* Doc. 1-3, Page 12-13). In his Petition for Injunctive Relief, he clarifies that he is serving a five-year term of post-release control after his release from Lorain Correctional Institution in November 2021. (Doc. 1-5, PageID 19).

Plaintiff says he was previously declared a Tier III sex offender. (Doc. 1-3, PageID 15; Doc. 1-5, PageID 19). He alleges that the APA also classified him as a "Targeted Sex Offender," or TSO. (Doc. 1-3, PageID 12-13). This may be a reference to ODRC Policy No. 103-SPS-02, entitled "Sex Offender Supervision," which appears to classify a released supervisee as a "targeted sex offender" if he or she has a certain score on "the sex offender risk assessment" or is otherwise so designated "through staffing with superintendent."[1]

---

[1] ODRC Policy No. 103-SPS-02, entitled "Sex Offender Supervision," provides in part:

> It is the policy of the ODRC to employ risk management practices in the supervision of sex offenders consistent with community safety, to provide supervisees with opportunities to correct and control behaviors that may be harmful to the community, and to facilitate effective reentry. All sex offenders supervised by the APA shall be classified by levels of supervision as determined by a risk assessment tool or as mandated by the court or Parole Board.

Section V. The policy describes the following procedures:

Plaintiff alleges that the TSO classification is a "0 tolerance" classification, which he says means he can be "arrested for any reason for [alleged violations of] Conditions of Parole and Imprisoned Before any facts are known."[2]  (Doc. 1-3, PageID 12-13).  He asserts that he has been arrested three times for three separate violations, and he challenges the truth or validity of some of the allegations against him.  (Doc. 1-3, PageID 14).  He appears to be in custody at MonDay as a result of the third violation.

---

> A. **Identification**
>
> A supervisee shall be identified as a sex offender for the purposes of supervision and resource deployment if the current offense for which they are being supervised is a sexually oriented offense pursuant to ORC section 2907 or on cases supervised for the courts and the journal entry identifies them as a sex offender.
>
> B. **Classification**
>
> Initial assessment/classification of sex offenders shall occur pursuant to this policy. The supervisee's risk shall be determined by utilizing the ORAS assessment and the sex offender risk assessment (e.g., Static 99R). An ORAS assessment shall be administered using all available information, which may include file review, face-to-face interview, self-report questionnaire, information from prior assessments, PSI, BCI reports, OHLEG, and the Ohio Court Network.
>
> 1. The timeframes and guidelines for completing the ORAS assessment and case plan shall be in accordance with ODRC Policy 100-APA-13, Supervision Reentry Planning, Supervisee Classification, Case Planning, and Contact Standards. Levels of initial supervision for sex offenders shall be decided by the court or the APA utilizing the ORAS and the sex offender risk assessment (e.g., Static 99R) pursuant to this policy, with sex offenders at a minimum being supervised at moderate supervision level for the first year.
>
> Targeted Sex Offender (TSO): static 99 score of eight (8) or above or otherwise designated through staffing with superintendent.

Section IV.  A version of this policy is available at https://drc.ohio.gov/about/resource/policies-and-procedures/103-sps-special-services/sex-offender-supervision (accessed August 30, 2023).

[2] This may be a reference to ODRC Policy No 100-APA-14, entitled "Sanctions for Violations of Conditions of Supervision," which discusses (among other things) hold orders.  *See generally State ex rel. Shie v. Ohio Adult Parole Auth.*, 167 Ohio St. 3d 450, 2022-Ohio-270, 194 N.E.3d 320, fn. 1 ("ODRC Policy 100-APA-14(VI)(G)(2) provides that a 'hold order' shall be placed on an offender when the APA intends to proceed with a violation hearing.  The APA has five business days to sanction the offender and remove the hold order.  The APA may extend an active hold order for up to five additional business days. ODRC Policy 100-APA-14(G)(3).") (internal citations omitted).  A version of this policy is available at https://drc.ohio.gov/about/resource/policies-and-procedures/100-apa-adult-parole-authority/sanctions-for-violations-of-conditions-of-supervision-rescinds-09102023 (accessed August 30, 2023).

Plaintiff appears to present an equal protection claim (that he is being treated differently than other releasees or parolees because of the zero tolerance classification), and a due process claim (that he has not been provided the minimum due process required by *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)), both presumably raised under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  (*See* Doc 1-3, PageID 12-15).  With respect to the due process claim, he alleges that he had no preliminary hearing, was denied the opportunity to challenge the truthfulness of the allegations against him, and was sent to prison before the "revocation" occurred.[3]  (Doc. 1-3, PageID 13).  He also complains that he has been given prison terms for non-violent, non-criminal issues.  (Doc. 1-3, PageID 13, 15).

Plaintiff argues that the TSO classification is arbitrary and unconstitutional, giving the APA "open will to confine and imprison."  (Doc 1-3, PageID 15).  He argues the APA should

---

[3] This may be a reference or challenge to ODRC Policy No. 105-PBD-09, entitled "Violation Hearing Process," which provides in part:

**A. Violation Hearing Timeframe**

1. When a supervisee who meets requirements for a hearing becomes available, the APA shall serve the supervisee with the Notice of Violation Hearing (DRC3304) within fifteen (15) business days, unless the supervisee is WUVL or PVAL status.
. . .
2. A violation hearing shall be conducted no later than twenty-five (25) business days from the date the supervisee becomes available unless the supervisee thereafter becomes unavailable as described in subsection VI.F.5 of this policy or a continuance is granted by the hearing officer. In the case of a violator at large who has left the state, the violation hearing shall be conducted no later than twenty-five (25) business days from the date of the supervisee's arrival in the state of Ohio.
3. A violation hearing shall be conducted no earlier than ten (10) business days from the date on which the supervisee is served with notice of the hearing and its date.

Section VI.  A version of this policy is available at https://drc.ohio.gov/about/resource/policies-and-procedures/105-pbd-parole-board/violation-hearing-process-rescinds-09102023 (accessed August 30, 2023).

follow the relevant statutes, Ohio Revised Code §§ 2967.28(E)[4] and 2967.28(F)(3),[5] rather than its own policy concerning TSO classifications. (Doc. 1-3, PageID 15). It is not made clear in the Complaint how these rules or standards differ.

Plaintiff seeks declaratory and injunctive relief. (Doc. 1-3, PageID 15-16). He requests a declaratory judgment "regarding the APA's imposition of T.S.O. and the failure to abide by procedure when violating for T.S.O. [zero] tolerance." (*Id.*, PageID 16). Plaintiff also seeks

---

[4] This section of the statute authorizes the ODRC to adopt rules for post-release control. In particular, it charges with ODRC with adopting rules that:

> (5) Establish standards to be used by the adult parole authority or parole board in imposing further sanctions under division (F) of this section on releasees who violate post-release control sanctions, including standards that do the following:
> (a) Classify violations according to the degree of seriousness;
> (b) Define the circumstances under which formal action by the parole board is warranted;
> (c) Govern the use of evidence at violation hearings;
> (d) Ensure procedural due process to an alleged violator;
> (e) Prescribe nonresidential community control sanctions for most misdemeanor and technical violations;
> (f) Provide procedures for the return of a releasee to imprisonment for violations of post-release control.

Ohio Revised Code § 2967.28(E)(5).

[5] This section of the statute provides in possibly relevant part:

> The parole board or, pursuant to an agreement under section 2967.29 of the Revised Code, the court may hold a hearing on any alleged violation by a releasee of a post-release control sanction or any conditions described in division (A) of section 2967.131 of the Revised Code that are imposed upon the releasee. Except as otherwise provided in this division, if after the hearing the board or court finds that the releasee violated the sanction or condition, the board or court may increase the duration of the releasee's post-release control up to the maximum duration authorized by division (B) or (C) of this section or impose a more restrictive post-release control sanction. . . . **When appropriate, the board or court may impose as a post-release control sanction a residential sanction that includes a prison term.** The board or court shall consider a prison term as a post-release control sanction imposed for a violation of post-release control when the violation involves a deadly weapon or dangerous ordnance, physical harm or attempted serious physical harm to a person, or sexual misconduct. Unless a releasee's stated prison term was reduced pursuant to section 5120.032 of the Revised Code, the period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months . . . The period of a prison term that is imposed as a post-release control sanction under this division shall not count as, or be credited toward, the remaining period of post-release control. If, during the period of the releasee's post-release control, the releasee serves as a post-release control sanction the maximum prison time available as a sanction, the post-release control shall terminate.

Ohio Revised Code § 2967.28(F)(3) (emphasis added).

6

injunctive relief. (*Id.*, PageID 15-16; *see also* Petition for Injunctive Relief, Doc. 1-5 (providing more detail)). The Petition asks for a preliminary and permanent injunction enjoining Defendants from:

- **(a)** Applying the TSO zero tolerance policy to Plaintiff at any hearing, revocation, or review;
- **(b)** imprisoning plaintiff "without a sentence or conviction of revocation;" and
- **(c)** unofficially classifying Plaintiff as a Targeted Sex Offender.

(Doc. 1-5, PageID 24).

Plaintiff sues four Defendants: Annette Chambers Smith (Director of the ODRC); Ed Banks (Assistant Director of the ODRC); Michael Anderson (Chief Hearing Officer of the Ohio Parole Board); and Lisa Hoying (Chairperson of the Ohio Parole Board).[6]

### III. Discussion

At this stage of the proceedings, without the benefit of an answer or other briefing, the Undersigned concludes that Plaintiff's Fourteenth Amendment equal protection and due process claims may **PROCEED** to further development. The Undersigned expresses no opinion on the merits of these claims at this time, or whether there may be defenses to them or procedural bars that will prevent Plaintiff from ultimately obtaining relief.

The Undersigned notes, however, that Plaintiff cannot use this civil rights action to obtain release from MonDay; habeas corpus is the sole remedy for prisoners seeking immediate or speedier release from prison. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). And, to the extent that Plaintiff may be arguing that he is innocent of the three violations and may be directly

---

[6] "The Ohio Parole Board is a section within the Adult Parole Authority, a state agency." *Latham v. Ohio Parole Board*, No. 1:15-cv-488, 2015 WL 5905833, at *3 (S.D. Ohio Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 5882979 (S.D. Ohio Oct. 7, 2015).

challenging the results of the post-release control violation hearing(s), he cannot proceed on that kind of claim either. *See Lathan v. United States*, No. 3:18-cv-2115, 2019 WL 857962, at *4 (N.D. Ohio Feb. 22, 2019) (applying *Heck v. Humphrey,* 512 U.S. 477, 486 (1994) to parole revocation decisions and post release control violation sanctions that involve incarceration and noting that to the extent the plaintiff "is objecting to the fact that he was sanctioned for post release control violations, he must first demonstrate that this finding was overturned. He has not done so, and that claim cannot proceed."). In his Complaint here, Plaintiff appears to acknowledge this limitation, citing *Heck* and asserting that success in this action "would only mean [Defendants] following procedures and prevent future unconstitutional Disciplinary hearings." (Doc. 1-3, PageID 15). To the extent that Plaintiff's claims appear to center on his TSO classification and future disciplinary hearings, and without briefing on the issue, the Undersigned will not recommend dismissal of Plaintiff's claims as barred by *Heck* at this time. *See generally Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Finally, the Undersigned observes that at least some of the allegations raised here appear to underlie cases pending or recently closed in the Supreme Court of Ohio, the Franklin County Court of Common Pleas, and elsewhere in state court.[7] *See generally RRI Assocs. LLC v.*

---

[7] *See Tremain Hogan v. Michael Flannery, Director [of MonDay]*, Ohio Sup. Ct. Case No. 2023-0886, available at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2023/0886 (accessed August 30, 2023); *Tremain Hogan v. ODRC*, Franklin Cnty. Case No. 23CV004992, available by name or case number search at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (accessed August 30, 2023); *Tremain Hogan v. Black, Warden*, 9th Dist. Lorain No. 23CA011940, 2023-Ohio-1527 (May 8, 2023 (dismissing habeas corpus action); *State ex rel. Hogan v.*

*Huntington Way Assocs., LLC*, No. 2:22-cv-3273, 2023 WL 2445589, at *2 (S.D. Ohio Mar. 10, 2023) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) ("considerations of judicial economy and federal-state comity may justify abstention in suits involving the contemporaneous exercise of jurisdiction by state and federal courts under the *Colorado River* doctrine.") (cleaned up). The parties may be asked to address this issue later in the case.

## IV. Petition for Injunctive Relief

Plaintiff's Petition seeks a preliminary and permanent injunction enjoining Defendants from:

> **(b)** Applying the TSO zero tolerance policy to Plaintiff at any hearing, revocation, or review;
>
> **(b)** imprisoning plaintiff "without a sentence or conviction of revocation;" and
>
> **(c)** unofficially classifying Plaintiff as a Targeted Sex Offender.

(Doc. 4, PageID 24). The Petition should be **DENIED** at this time, subject to renewal or reconsideration after further development.

Federal Rule of Civil Procedure 65 governs the procedures and requirements for injunctions and temporary restraining orders. The purpose of a TRO is "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). The same standard generally applies to temporary restraining orders and preliminary injunctions. *Ohio Republican Party v. Brunner*, 543 F.3d 357,

---

*Ohio [Adult] Parole Auth.*, 10th Dist. Franklin No. 22AP-497, 2023-Ohio-285 (Jan. 31, 2023) (dismissing habeas corpus action). The Court may take judicial notice of these court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

361 (6th Cir. 2008); *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

In determining whether to grant or deny injunctive relief, the Court must consider four factors: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coal. for Homeless*, 467 F.3d at 1010 (quoting *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

In deciding if a preliminary injunction is warranted, the Court must "weigh carefully the interests on both sides." *Lang v. Thompson*, No. 5:10-cv-379, 2010 WL 4962933, at *4 (E.D. Ky. Nov. 30, 2010) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). Moreover, when a prisoner requests an order enjoining a state prison official, the Court must "proceed with caution and due deference to the unique nature of the prison setting." *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, at *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)). A preliminary injunction is an "extraordinary and drastic remedy" and should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (quoting *Munaf v.*

*Geren*, 553 U.S. 674, 689-90 (2008); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

The Petition offers brief arguments in support of the four factors discussed above, but they are not well-developed. (Doc. 4, PageID 23). Upon consideration of the Complaint and the Petition, the Undersigned concludes that while Plaintiff has arguably stated a claim for purposes of screening, he has not demonstrated a strong likelihood of success on the merits. One of his primary concerns is that the Adult Parole Authority is not complying with Ohio Revised Code § 2967.28. (Complaint, Doc. 1-3, PageID 15; Petition, Doc. 4, PageID 24). He asks that the APA be held to "a strict compliance to sentence and punish in accordance to 2967.28," among other things. (Doc. 1-5, PageID 24). But that statute, on first review, appears to permit the APA to impose a prison term or a "community residential sanction" for violations of post-release control. It says:

> The parole board . . . **may** hold a hearing on any alleged violation by a releasee of a post-release control sanction or any conditions described in division (A) of section 2967.131 of the Revised Code that are imposed upon the releasee. Except as otherwise provided in this division, if after the hearing the board or court finds that the releasee violated the sanction or condition, the board or court may increase the duration of the releasee's post-release control up to the maximum duration authorized by division (B) or (C) of this section or impose a more restrictive post-release control sanction. . . . **When appropriate, the board . . . may impose as a post-release control sanction a residential sanction that includes a prison term**.

Ohio Revised Code § 2967.28(F)(3) (emphasis added). The statute also provides that:

> If the adult parole authority . . . determines that a releasee has violated a post-release control sanction or any conditions described in division (A) of section 2967.131 of the Revised Code imposed on the releasee and that a more restrictive sanction is appropriate, the authority . . . may impose a more restrictive sanction on the releasee, in accordance with the standards established under division (E) of this section or in accordance with the agreement made under section 2967.29 of the Revised Code, or may report the violation to the parole board for a hearing pursuant to division (F)(3) of this section. The authority . . . may not, pursuant to this division, increase the duration of the releasee's post-release control or impose as a post-release control sanction a residential sanction that includes a prison term, but **the authority . . . may impose on the releasee any other residential sanction,**

11

> nonresidential sanction, or financial sanction **that the sentencing court was authorized to impose pursuant to section[] 2929.16 . . . of the Revised Code.**

Ohio Revised Code § 2967.28(F)(2). Revised Code 2929.16(A) in turn permits a "community residential sanction" of "a term of up to six months at a community-based correctional facility[.]" *See generally Bettis v. Flannery*, 2d Dist. Montgomery No. 29207, 2021-Ohio-4646, ¶ 2 (Nov. 22, 2021) (noting the MonDay's director's argument that "the Adult Parole Authority is permitted by statute to impose a 'residential sanction' in a community based correctional facility for a violation of post-release control, for up to six months" under R.C. 2967.28(F)(2) and R.C. 2929.16(A)(1), without a hearing).

The record of this case does not show whether this is indeed what happened to Plaintiff.[8] But a preliminary consideration of the statutes, and of the ODRC policies mentioned earlier, does not convince the Undersigned that Plaintiff has a shown a strong likelihood of success on the merits, particularly where this case is ostensibly about future relief (*see* Doc. 1-3, PageID 15)

---

[8] Plaintiff did not attach any documents to his Complaint from his latest violation proceedings. He did, however, attach some documents to his complaint for false imprisonment filed in the Franklin County Court of Common Pleas. *See* footnote 7. One of those documents says, concerning the "Summary of evidence used in arriving at findings:"

> Supervisee was arrested on 5/12/2023 by the Adult Parole Authority and was available at that time. He was served with his violations on 5/22/2023 (6th business day) and the hearing was scheduled for 6/20/2023 (25th business day). One continuance was issued in this case; hearing is being held on 6/26/2023 (29th business day). At the time of service, Supervisee did not request witnesses and requested representation through OPD. Pre-hearing staffing completed; forwarded to OPD. OPD agreed to represent- Daniel Marcus. He did not provide a written statement. At the time of service, the Supervisee did not enter any pleas. He was served with the following violations-- Rule 1, Ct. 1 & 2; and Rule 2. Time frames are compliant with policy 105-PBD-09.
>
> At the time of the hearing, Supervisee elected to waive his hearing with the assistance of Daniel Marcus- OPD. He did not make a statement at that time.
>
> APA provided the following evidence: conditions of supervision, violation report with corroboration, photos and Montgomery County jail document.
>
> Hearing Officer finds the supervisee guilty of the charged violations based upon a preponderance of the evidence considering the record as a whole[.]

Exhibit B to Complaint in Franklin County Case No. 23CV004992.

and Plaintiff cannot obtain here his release or directly challenge the results of his violation hearing.

Nor has Plaintiff convinced the Undersigned that he will suffer irreparable injury if a preliminary injunction is not granted at this time. Plaintiff is currently serving a 180-day term of custody. (Doc. 1-3, PageID 14; Doc. 1-7, PageID 29). There is no indication that any future hearings or violations are imminent or that they will be after his release.

Finally, a preliminary injunction is not warranted because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held, *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)—would not be served. According to Plaintiff, the status quo is that he is has been classified as a Targeted Sex Offender. (Doc. 1-3, PageID 12). Removing that classification would change, rather than preserve, the status quo.

The Undersigned concludes that extraordinary relief is not warranted and accordingly **RECOMMENDS** that the Court **DENY** Plaintiff's Petition (Doc. 4) at this time, without prejudice to renewal or reconsideration after further factual development.

**V.      Service of Process**

Plaintiff submitted Summons and Marshal forms with his Complaint. (Doc. 1-8, PageID 30-41). The <u>United States Marshal Service</u> is **DIRECTED** to serve a copy of the Summons, the Complaint, the Order granting Plaintiff *in forma pauperis* status, and this Order and Report and Recommendation on Defendants, with costs of service to be advanced by the United States.

**VI.     Summary and Conclusion**

The Undersigned has screened the Complaint (Doc. 1-3) as required by 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2) and concludes that Plaintiff may proceed further on his Fourteenth Amendment equal protection and due process claims. Although these claims may

proceed at this time, the Undersigned **RECOMMENDS** that the Court **DISMISS** any part of the claims that may seek immediate or speedier release from state custody or may directly challenge the results of Plaintiff's post-release control violation hearing(s).

The Undersigned further **RECOMMENDS** that the Court **DENY** Plaintiff's Petition for Injunctive Relief (Doc. 4) at this time, without prejudice to renewal or reconsideration after further factual development.

Service of process shall proceed as directed above. Plaintiff is **ADVISED** that he must keep this Court informed of his current address, and promptly file a Notice of New Address if he is released or transferred.

## VII. Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a

waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

September 11, 2023                                   */s/Stephanie K. Bowman*
                                                                STEPHANIE K. BOWMAN
                                                               UNITED STATES MAGISTRATE JUDGE