**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TREMAIN HOGAN,                                    Case No: 3:23-cv-226

                    Plaintiff,                    Newman, J.
        v.                                        Bowman, M.J.

ANNETTE CHAMBERS SMITH, et al.,

                    Defendants.


**REPORT AND RECOMMENDATION**

On August 10, 2023, Plaintiff initiated this prisoner civil rights case against four

individuals, all of whom are affiliated with the Ohio Department of Rehabilitation and

Correction ("ODRC") and the Adult Parole Authority ("APA").[1] Upon initial screening, the

Court evaluated Plaintiff's allegations that a sex offender classification imposed on him

by the APA either violates or has led to violations of his constitutional rights. (Doc. 5). A

Report and Recommendation ("R&R"), subsequently adopted as the opinion of the Court,

allowed equal protection and due process claims to proceed. (Docs. 5, 22).

On February 6, 2024, Defendants moved for judgment on the pleadings and for a

stay of discovery pending resolution of its Rule 12 motion. (Docs. 27, 28). Plaintiff filed a

cross-motion for judgment on the pleadings. (Doc. 32). This R&R recommends granting

---

[1]Plaintiff has filed multiple prior cases including two other civil rights lawsuits in this Court. *See generally* Doc. 1-2; *Hogan v. House Holder*, No. 2:22-cv-3741-JLG-CHG and *Hogan v. Walter*, No. 2:23-cv-3981-SDM-SKB.  In *Hogan v. House Holder*, Plaintiff alleges that correctional officers engaged in the excessive use of force in violation of the Eighth Amendment. In *Hogan v. Walter*, Plaintiff alleges that Plaintiff's parole officer engaged in malicious prosecution by charging him with the crime of escape based on the removal of his ankle monitor – an incident that also provided grounds for the revocation of Plaintiff's parole.

in part Defendants' pending motion for judgment on the pleadings under Rule 12(c), while recommending the denial of Plaintiff's cross-motion for judgment. A separate order has been filed this same day to address all remaining motions.

### I.     Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6), with review limited to the pleadings. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). In considering Defendants' Rule 12(c) motion, the court "must construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Ziegler v. IBP Hog Market, Inc*., 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). But even though a plaintiff's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint need not contain "detailed factual allegations," but must provide "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Under this standard, Defendants' motion argues that Plaintiff's complaint fails to state an equal protection claim as a matter of law. In addition, Defendants argue that this Court should abstain and dismiss the due process claim under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) based on ongoing state court proceedings. Plaintiff's cross-motion primarily presents argument in opposition to Defendants' motion. However, Plaintiff also briefly argues that he is entitled to a judgment that declares Plaintiff's rights "under 0 tolerance sex offender policy and his rights before being imprisoned" as well as permanent injunctive relief that would prevent Defendants from imposing imprisonment "under 0 tolerance." (Doc. 32, PageID 314). For the reasons stated, the undersigned recommends that Defendants' motion be granted only in part and that Plaintiff's motion be denied in its entirety.

## II.    Judicially Noticed Facts and Allegations of Complaint

Although review generally is limited to Plaintiff's complaint, the Court also may take judicial notice of public records. "A court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b)(2). To provide context for Plaintiff's allegations, the Court notes that Plaintiff previously served a thirteen year prison sentence for rape and attempted rape under state law. *See generally, State*

*v. Hogan*, C.P. No. 08CR-12-8615, 2011 Ohio Misc. LEXIS 18360 (July 8, 2011). His sentence included five (5) years of mandatory post-release control, pursuant to Ohio R.C. § 2929.19(B)(3). Plaintiff was classified as a Tier III sex offender.

Plaintiff alleges in his complaint that he was initially released on November 25, 2021. (Doc. 1 at PageID 59). Subsequently, he was arrested and imprisoned three times for having violated the conditions of his post-release control supervision. (*Id.*) The first arrest occurred on May 16, 2022. (*Id.*; Doc. 3-4). Plaintiff' parole was revoked and a period of 150 days of imprisonment was imposed. (*Id.*) Plaintiff was next released on October 12, 2022. On October 14, 2022, he was arrested a second time, and a 200-day term of imprisonment was imposed for violations of his post-release control supervision. (*Id.*) After his next release on May 5, 2023, Plaintiff was arrested a third time on May 12, 2023, again for violating conditions of post-release control supervision. For his third violation, he was sentenced to up to 180 days imprisonment. (*Id.*)[2]

Plaintiff alleges that immediately following his three arrests, he was not afforded preliminary hearings or other Fourteenth Amendment due process rights as guaranteed under *Morrisey v. Brewer*, 408 U.S. 471 (1972). (Doc. 1, PageID 49). He alleges that the APA "forces [a] waiver of Hearing with threat of max 270 days Imprisonment." (Doc. 3-4). He argues that the underlying reason for the denial of a hearing and/or forced waiver of a hearing is his classification by the APA as a "Targeted Sex Offender" ("TSO"). (Doc. 5, R&R at 3). According to Plaintiff, his TSO classification results in him being subjected to a "zero tolerance" standard that violates the Equal Protection Clause. Plaintiff alleges that

---

[2]At the time he filed this complaint, Plaintiff appeared to be in the custody of the ODRC at the MonDay Community Correctional Institution, a "community based correctional facility." (Doc. 1, PageID 2, 6). On April 30, 2024, Plaintiff filed a change of address that reflects he is no longer incarcerated. (Doc. 39).

under the alleged zero-tolerance standard, he can be "arrested for any reason for [alleged violations of] Conditions of Parole and [i]mprisoned [b]efore any facts are known." (*Id.*, R&R at 4, citing Doc. 1-3, PageID 12-13).

The TSO designation to which Plaintiff refers is contained in ODRC Policy No. 103-SPS-02, entitled "Sex Offender Supervision." The referenced policy classifies a released supervisee as a "Targeted Sex Offender" based on the individual's score on "the sex offender risk assessment" or if otherwise so designated "through staffing with superintendent." *Hogan v. Smith*, No. 3:23-cv-226 (Doc. 5, PageID 69), 2023 WL 5884126 (S.D. Ohio, Sept. 11, 2023). The Court previously construed Plaintiff's complaint as alleging violations of his equal protection rights (to the extent that he alleges being treated differently than other releasees or parolees because of the TSO designation and the related zero-tolerance standard), and of his due process rights (to the extent that he alleges he was not provided the minimum due process required when his parole was revoked). (*Id.*, PageID 71).

Although the Court directed service to issue on Plaintiff's claims, the Court observed that "at least some of the allegations raised here appear to underlie cases pending or recently closed in the Supreme Court of Ohio, the Franklin County Court of Common Pleas, and elsewhere in state court." (Doc. 5 at 8-9, and n. 7, citing *Tremain Hogan v. Michael Flannery, Director [of MonDay],* Ohio Sup. Ct. Case No. 2023-0886; *Tremain Hogan v. ODRC, Franklin Cnty*. Case No. 23CV004992; *Tremain Hogan v. Black*, *Warden*, 9th Dist. Lorain No. 23CA011940, 2023-Ohio-1527; *State ex rel. Hogan v. Ohio [Adult] Parole Auth.*, 10th Dist. Franklin No. 22AP-497, 2023-Ohio-285).

### III.     Analysis

### A. Consideration of Exhibits to the Parties' Motions

Prior to addressing the merits of the parties' cross-motions, the Court must address a preliminary procedural issue concerning exhibits attached to the motions. First, Defendants have attached four exhibits, including three copies of complaints that Plaintiff filed in state court. The public records exception permits this Court to consider the complaints from Plaintiff's previously referenced state court litigation. The fourth exhibit is represented to be the ODRC sex offender policy at the heart of Plaintiff's complaint. That exhibit also may be considered under Rule 12, both because the policy is central to Plaintiff's complaint and because it is a public record.[3] *See, generally Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.") (internal quotation marks and citation omitted).

Plaintiff too has attached an exhibit to his cross-motion: a "Sworn Affidavit." (*See* Doc. 32 at PageID 315-318). But because the Affidavit purports to provide evidence outside of Plaintiff's complaint that is not a public record and falls under no other exception

---

[3]ODRC's current policies are available to the public at https://drc.ohio.gov/about/resource/policies-and-procedures. Although prior versions of Policy 103-SPS-02 are not readily accessible on the internet, both prior and current versions of the policies are public records. The prior version of Policy 103-SPS-02, effective from September 14, 2020 through February 28, 2023, contained no provision for classifying an offender as a TSO; instead, the policy contained four classification levels: "Very High Risk"; "High Risk"; "Moderate Risk" and "Low Risk." (*See id.*, Doc. 27-4, § VI.B.1, PageID 260). Effective March 1, 2023, Policy No. 103-SPS-02 was amended to include an additional "TSO" designation as the highest level of classification for any sex offender "with a static 99 score of eight (8) or above" on the referenced risk assessment tool, as well as for any sex offender who is "otherwise designated through staffing with superintendent." (Doc. 27-4, PageID 272).

to this Court's limited scope of review, the Court cannot and will not consider Plaintiff's exhibit at this time.

### B.  Plaintiff's Equal Protection Claim Should be Dismissed

Upon initial screening, the undersigned previously construed Plaintiff's complaint as asserting that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff differently than other releasees or parolees based on his TSO classification and corresponding zero-tolerance policy. (Doc. 5 at PageID 71). Upon further review of that claim in light of Defendants' pending motion, the Court now concludes that Plaintiff has failed to state an equal protection claim as a matter of law.[4]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 105 S.Ct. 3249, 3254, 473 U.S. 432, 439 (1985) (additional citation omitted). Plaintiff's equal protection claim is based on allegations that Policy 103-SPS-02 subjects TSO parolees to more rigorous conditions and standards than are imposed on sex offender parolees placed in lower risk categories. This Court's review of the express language of the revised Policy confirms that an individual parolee's risk category impacts at least some conditions of parole.[5] But alleging a difference in treatment based on classification is merely the first step required to state

---

[4]The Court's preliminary screening under 28 U.S.C. § 1915(e)(2) does not bar subsequent dismissal under Rule 12. In fact, the statute expressly permits dismissal "*at any time* if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." *Id.* (emphasis added). Therefore, the statute allows dismissal based upon a subsequent redetermination that no claim has been stated.

[5]For example, the revised policy requires additional supervised contacts for those classified as "TSO" (four per month with their APA parole officer, with two contacts to be made in the field) than for those classified as "Very High Risk" (which requires three positive contacts per month, with one "community contact" every two months, and two contacts "with family/support systems (if identified)" every six months. (Doc. 27-4 at PageID 274).

an equal protection claim. To determine whether a classification is so arbitrary that it violates the Equal Protection Clause, a court must determine whether the challenged classification is based on a suspect criterion or whether it impinges upon a fundamental right. If so, the court must apply a "strict scrutiny" test. *See Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).

In the case presented, neither TSO offenders nor any other classification of sex offenders constitute a suspect class. *See generally*, *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) ("Convicted sex offenders are not a suspect class."). In addition, a parole classification cannot implicate a fundamental right "because there is no constitutional right to release on parole." *Rice v. Michigan Parole Bd*., No. 1:05–CV–549, 2008 WL 5156760, at *5 (W.D. Mich. Dec. 9,.2008) (additional citations omitted). Therefore, Plaintiff's equal protection claim is not subject to strict scrutiny, but is subject to review only under the rational basis test.

Under the rational basis test, Plaintiff fails to state a plausible equal protection claim based on his TSO classification or corresponding post-release revocation. To prove his claim, Plaintiff would be required to show that the APA policy differentiates between similarly situated persons <u>and</u> that the policy is not rationally related to any conceivable governmental purpose. *Hadix v. Johnson*, 230 F.3d at 843. Defendants here offer a rational argument that the risk assessment tools used to categorize sex offenders under the ODRC policy, and the Defendants' corresponding enforcement of conditions of post-release control supervision based on a sex offender's classification, are aimed at reducing the potential that a sex offender who is likely to re-offend might remain on parole. Defendants' explanation provides a sufficient basis for dismissal of Plaintiff's claim. "The

8

government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data." *Hadix*, 230 F.3d at 843. The policy subjects *all* sex offenders to the *same* risk classification system (including the TSO classification) based on the same risk assessment measure. The fact that the policy permits reclassification based on the individual's post-release conduct supports the Defendants' position that the policy is rationally based on the sex offender's likelihood of committing another offense. *Id.*, *see also* Policy 103-SPS-02. In short, Defendants' stated basis for the Policy satisfies the rational basis test.

Plaintiff argues that the post-release conditions that he personally was accused of violating did not involve additional sex-related offenses. But challenges to the prior revocations of Plaintiff's parole are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). In an effort to sidestep that bar, Plaintiff's allegations focus on the APA's allegedly "arbitrary" TSO classification and the extra-stringent standards for revocation allegedly applied to TSO parolees. But he fails to allege any facts to suggest that the APA's risk assessment tools, on which the TSO classification is based, are arbitrary and irrational. Nor does he otherwise rebut the Defendants' rational explanation for the policy. Therefore, Plaintiff fails to state a plausible equal protection claim. *See generally*, *Juarez v. Renico*, 149 F.Supp.2d 319, 325 (E.D. Mich. 2001) ("Assuming without deciding that the state in fact applies stricter standards to sex offenders who apply for parole, the Court concludes that such practice does not offend the Equal Protection Clause.").

Defendants' motion additionally argues that Plaintiff has failed to state a "class-of-one" claim. A class-of-one claim suggests the APA has singled Plaintiff out in particular

for different treatment without any "rational basis for the difference in treatment." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The undersigned does not necessarily read Plaintiff's allegations as a class-of-one claim because his allegations focus on conditions imposed on *all* sex offenders and/or all TSO-classified parolees – an identifiable class even if not a "suspect" class. *See generally*, *Davis v. Prison Health Services*, 679 F.3d 433, 442 (6th Cir. 2012) (explaining that inmate had not alleged a "class-of-one" claim, but that claim was still subject to the rational basis test where inmate alleged discrimination based on his inclusion in an identifiable group); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir.2008) ("The 'class of one' theory ... is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis original). But even if construed as a class-of-one, the undersigned agrees with Defendants that dismissal under Rule 12(c) is required because Plaintiff does not allege that he was treated differently than other TSO parolees.

Plaintiff's allegations about the alleged zero-tolerance policy for revocation of TSO parolees fail to state an equal protection claim for the same reason. Again, Plaintiff does not allege that he has been treated differently than any other sex offender or TSO parolee. To the extent that he is alleging that less leniency in revocation proceedings is shown to TSO parolees than to other sex offenders who violate their conditions, his claim fails for several reasons. First, Defendants offer a rational explanation for the different post-release conditions based on policy (to curtail the perceived risk of allowing the highest risk parolees to continue on parole) and Plaintiff does not explain how the alleged "zero

tolerance" standard (assuming that it exists)[6] is arbitrary. Second, the Ohio General Assembly has granted broad discretionary authority to the APA under O.A.C. §5120:1-1-17(A) and O.A.C. § 5120-1-1-17(b), including the discretion of parole officers to "reasonably impose various sanctions in response to violation behavior" including terms of imprisonment. In other words, Ohio R.C. § 5120.01 grants the ODRC, the Director, and the Director's designees (including Defendants) "total authority to prescribe and implement" the referenced sex offender policy. And finally, a class-of-one claim cannot be stated in relation to parole decisions because parole considerations are inherently "subjective and individualized."[7] "When a parole board's decisions are subjective and discretionary… courts have found that the class-of-one equal protection theory does not apply." See *Perkins v. Chandler*, No. 5:12-CV-P12-R, 2013 WL 1966275, at *4 (W.D. Ky. May 10, 2013) (collecting cases and quoting *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 604 (2008)).

### B.  Plaintiff's Due Process Claims

As previously discussed, Plaintiff alleges in his complaint that he was provided with no preliminary hearing, was denied the opportunity to challenge the truthfulness of the allegations against him, and repeatedly was sent to prison and/or the MonDay program before any formal "revocation" was adjudicated. (Doc. 1-3, PageID 13). On initial review, this Court reasonably interpreted those allegations as alleging a violation of Plaintiff's due

---

[6]As Defendants point out, Plaintiff has failed to include any facts *in his complaint* to support the existence of the allegedly unwritten provision. Policy 103-SPS-02 does not currently and did not previously include any explicit "zero tolerance" provision for revocation of any class of sex offender. In opposition to Defendants' motion, Plaintiff reasons that none of his alleged violations were "criminal or a threat to society," and hypothesizes that "0 tolerance can be the only explanation" for the punishment that was meted out. (Doc. 32 at PageID 311; *but see also* Doc. 31, PageID 297-298, asserting that his parole officer referenced the alleged 0 tolerance policy when Plaintiff questioned why he was "going to jail for curfew" in May 2022).
[7]*See Morrissey v. Brewer*, 92 S.Ct. at 2599–600, 408 U.S. at 480 ([D]eciding what to do about [a] violation once it is identified, is not purely factual but also predictive and discretionary.").

process rights under *Morrissey v. Brewer*, the seminal case in which the Supreme Court held that minimal procedural due process protections are due when a parolee is charged with a violation of a condition of his post-release supervision conditions. Those protections include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.*, 92 S.Ct. 2593, 2604, 408 U.S. 471, 489 (1972) (additional citation omitted).

But Plaintiff's cross-motion makes clear that he is alleging not only the previously acknowledged *Morrissey* claim, but more generally that the Defendants have violated his constitutional rights by revoking his parole for non-violent, non-criminal issues. According to Plaintiff, the practical effect of the TSO "0 tolerance" standard means that a TSO parolee has "no chance to present any factors in mitigation" of any alleged violations, but will be returned to a sentence of imprisonment no matter how minor the alleged violation. (Doc. 32, PageID 309). In his cross-motion for judgment, he suggests that the unwritten "0 tolerance" standard denies him due process, because the APA is using the TSO classification as an additional punitive measure. "This action is challenging the punitive action to incarcerate before a revocation hearing… [d]ue to 0 tolerance T.S.O. which is nowhere in [the] sex offender supervision [Policy] 103-SPS-02." (Doc. 32, PageID 311; *see also* Doc. 1-3, PageID 15, alleging policy gives APA "open will to confine and imprison)). He maintains that he is "being punished for being a sex offender" merely on

the basis of his TSO status because "[n]o reasonable authority would send Plaintiff to prison for" the allegedly minor violations that he was charged with. (*Id.*, PageID 312; s*ee also* Doc. 1-3, PageID 13, 15).[8]

This Court has already explained that any claims based on the prior sentences imposed for revocation are barred by *Heck v. Humphrey,* 512 U.S. 477, 486, 114 S.Ct. 2364 (1994). But in light of the arguments presented in Plaintiff's cross-motion for judgment on the pleadings, the undersigned reevaluates under 28 U.S.C. § 1915(e) whether Plaintiff's TSO and zero-tolerance allegations also should be considered under the Due Process Clause. Plaintiff complains both about the stringency of the conditions applied to him and about the alleged unwritten policy that results in revocation for every minor violation by a TSO parolee.

To the extent that such allegations could be construed as asserting an additional due process claim based on parole conditions beyond the referenced equal protection claim, the undersigned now concludes that Plaintiff fails to state a claim. "*Morrissey* does not provide a basis for evaluating whether parole conditions themselves implicate a liberty interest." *Catanzano v. Harry*, 848 F.Supp.2d 780, 794 n.5 (W.D. Mich. 2012); *see also Daniel v. Bredesen*, 2008 WL 901506, at *3 (E.D. Tenn. 2008) (rejecting prisoners' due process claim that conditions of supervision promulgated by Board rather than outlined in statutes were vague). In *Morrissey*, the Supreme Court emphasized that fewer due process protections are due to a parolee because parole is granted with recognition that some parolees "will not be able to live in society without committing additional antisocial

---

[8]In his cross-motion for judgment, he maintains that not only is that "0 tolerance" provision incorporated into his TSO classification, but that his parole was revoked based on an unwritten provision of the same policy even before the TSO classification was established on March 1, 2023. (Doc. 34 at PageID 330). His complaint includes a similar allegation. (Doc. 3, PageID 48).

acts." *Id.*, 92 S.Ct. at 2601, 408 U.S. at 483. "Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* In addition, "several courts have concluded that sex-offender classifications and mandatory sex-offender treatment for convicted sex offenders do not require additional due process protections beyond the conviction." *Catanzaro*, 848 F.Supp.2d at 796 (collecting cases).

### 2. *Colorado River* Abstention

As for the *Morrissey* procedural due process claim that this Court previously recognized, Defendants argue that this Court should abstain from the exercise of its jurisdiction and dismiss under *Colorado River* abstention principles based on several related cases that Plaintiff has filed in state court. For example, on April 6, 2023, Plaintiff filed a complaint and initiated *Hogan v. Adult Parole Auth*., Franklin Cty. C.P. No 23 CV 2394. (Doc. 27-1). On July 13, 2023, Plaintiff filed a complaint and initiated *Hogan v. Howell, Franklin Cty*. C.P. No. 23 cv 4979. (Doc. 27-2). On July 13, 2023, Plaintiff filed a complaint and initiated *Hogan v. ODRC*, Franklin Cty. C.P. No. 23 CV 4992. (Doc. 27-3). And – although Plaintiff did not include any federal due process or equal protection claims – he filed a mandamus action seeking jail-time credit stemming from the same facts and events. *See Hogan v. OAPA*, 10th Dist., Franklin No. 23 AP 432.

In opposition to abstention, Plaintiff argues that *Hogan v. ODRC* and *Hogan v. Howell* have both been dismissed, "[r]endering abstention pointless" with respect to those

two cases. (Doc. 32, PageID 307). The Court agrees.[9] On the other hand, *Hogan v. APA* remains ongoing, as does the mandamus action. But based on the dissimilarity of issues involved, the undersigned does not find the mandamus action to be a parallel proceeding.

Although Defendant's abstention argument merits consideration only as to *Hogan v. APA,* that case does qualify as a parallel proceeding. As in this case, Plaintiff complains in state court about his arrest by his parole officer for a curfew violation, and being sent "to prison before revocation" which he alleges violated the "Due Process of Ohio [and] United States Constitution." (Doc. 27-1, complaint at PageID 222). Plaintiff argues that the Defendant APA acted without statutory authority under Ohio law by transporting him to the Lorain Correctional Facility upon his arrest, prior to any revocation hearing, and without a formal revocation of parole or valid order.[10] (*Id.*, PageID 224). He further alleges in state court that the APA's procedures violated state law. "Nothing in [Ohio R.C.] 2967.28(f) says the OAPA can send [Plaintiff] to prison to be punished before revocation." (*Id.*, PageID 223).

The APA moved to dismiss Plaintiff's state court complaint, separately addressing Plaintiff's illegal confinement claims and his due process violations. On July 11, 2023, the state court partially granted APA's motion and dismissed the illegal confinement claims,

---

[9]If the two cases were still pending, they might be considered parallel based on the identity of underlying facts and similarity of claims, including but not limited to claims that Plaintiff's parole was revoked and that he was imprisoned without a hearing. (*See e.g.*, *Hogan v. ODRC*, Doc. 27-3, PageID 240).

[10]Defendants' Rule 12(c) motion does not challenge the truth of Plaintiff's allegations about the lack of a revocation hearing. However, an opinion by the Ohio Court of Appeals refers to a revocation hearing held on June 26, 2023, after which plaintiff was found guilty of violations and sentenced to serve 180 days in MonDay CBCF, which the court describes as "a community-based correction facility." The state court also refers to a subsequent revocation hearing held on October 4, 2023, following which plaintiff "was found to have violated the terms of his post-release control, again, and ordered to serve 204 days in prison, effective October 5, 2023." *Hogan v. Henderson*, 2023 -Ohio- 4680, ¶ 3, 2023 WL 8869128, at *1 (Ohio App. 6 Dist., Dec. 21, 2023). At the time, the state court noted that Hogan had filed ten prior cases, including seven cases filed following his arrest in May 2023 for post-release control violations. *Id.*, n.1.

while denying the motion to dismiss regarding the constitutional issues. *Hogan v. [Ohio] Adult Parole Authority*, 2024-Ohio-307, ¶ 5, 2024 WL 342687, at *1 (Ohio App. 10 Dist., Jan. 30, 2024). Plaintiff attempted to appeal the partial dismissal. However, the Ohio Court of Appeals, Tenth District dismissed Hogan's appeal of the partial dismissal for lack of jurisdiction. *Id*. Therefore, Plaintiff remains free to resume active litigation of his due process claims in state court.[11] In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the Supreme Court noted that judicial economy and federal-state comity justify a federal court's abstention when there is a contemporaneous exercise of jurisdiction in both state and federal courts. The threshold inquiry – whether a parallel proceeding exists in state court – is satisfied with respect to *Hogan v. APA*. *Accord Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

In an attempt to differentiate this case from his parallel state court proceeding, Plaintiff asserts that his federal case is limited to his challenge of "the illegal 0 Tolerance classification of T.S.O target sex offender which is an arbitrary and capricious [classification]." (Doc. 32, PageID 308). And he argues that only in federal court does he challenge the alleged "0 tolerance" policy and TSO classification.

Plaintiff's first contention is belied by his complaint in this case, which clearly alleges due process violations under *Morrissey*. That due process claim arises out of the same operative facts as are alleged in the state court case. The fact that Plaintiff seeks to assert *additional* claims beyond those alleged in *Hogan v. APA* does not mean that the cases are not "parallel." Otherwise, a litigant could always file identical claims in state and

_____

[11]The trial court entered a stay of proceedings on November 14, 2023 pending resolution of Plaintiff's interlocutory appeal. Although no one has yet taken any action to dissolve that stay, the Order dismissing the appeal was docketed in the trial court record on February 5, 2024.

federal courts and escape the prospect of abstention merely by varying a single claim. In any event, the undersigned has determined that Plaintiff's added allegations concerning TSO classification and zero-tolerance fail to state any cognizable federal claim. *See generally*, *Healthcare Company Ltd. v. Upward Mobility, Inc.*, 784 Fed. Appx. 390, 394 (6th Cir. 2019) (affirming stay pending the conclusion of a related state court case deemed to be "parallel" despite the fact that the state court case was much broader and included additional claims). "Exact parallelism is not required;  It is enough if the two proceedings are substantially similar." *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir.1998) (internal quotation marks and citations omitted).

Still, the mere existence of a parallel proceeding does not support abstention. "Abstention from the exercise of federal jurisdiction is the exception, not the rule" because federal courts have a "virtually unflagging obligation… to exercise the jurisdiction given them." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 813, 817)). To determine whether abstention is appropriate, a court should give due "regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. The Supreme Court has identified eight factors to be considered:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation; …
> (4) the order in which jurisdiction was obtained[;] …
> (5) whether the source of governing law is state or federal; …
> (6) the adequacy of the state court action to protect the federal plaintiff's rights; …
> (7) the relative progress of the state and federal proceedings; …and,
> (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340-41 (collecting cases and factors, internal citations omitted). These factors are not "a mechanical checklist," but instead require "'a careful balancing of the important factors as they apply in a given case.'" *Id.*, 160 F.3d at 341 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983)).

Defendants suggest that "the facts support abstention under the first and fourth factors…." (Doc. 27 at PageID 217). But the first factor only applies to cases concerning property; therefore, the first factor disfavors abstention. *Accord PaineWebber*, 276 F.3d at 207; *Romine*, 160 F.3d at 341 (abstention is disfavored when the case does not involve any res or property). The second factor, which concerns only geographical convenience, also disfavors abstention because both cases are being litigated in the same geographical area. *Accord Romaine,* 101 F.3d at 341 (where both state and federal actions are pending in Columbus, Ohio, the factor of geography is irrelevant and "counsels against federal abstention.").

By contrast, the third factor, sometimes described as the most important factor in the analysis, strongly favors abstention in this case.  "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Taylor v. Campanelli*, 29 F.Supp.3d 972, 978-79 (E.D. Mich.  2014) (quoting *Romine*, 160 F.3d at 341). Despite Plaintiff's attempt to add additional equal protection and due process claims to this federal action, the due process issues concerning Plaintiff's *Morrisey* claims are identical. "Given the risk of conflicting findings, inefficiency, and fairness concerns, the Court finds that the third factor – avoidance of piecemeal litigation – strongly favors abstention." *American Security &*

*Audio Video Systems, Inc. v. Prep TMT, LLC*, Nos. 5:22-CV-00558-AMK, 5:22-CV-01399-AMK, 2023 WL 2956614, at *12 (N.D. Ohio, April 14, 2023).

Defendants are correct that the fourth factor also favors abstention because the pending Ohio case was filed roughly six months prior to the date that Plaintiff initiated suit in this Court.[12] The seventh factor – the relative progress of proceedings – also favors abstention. Although no substantive issues have *yet* been decided, the state court case already has been through one improvidently-filed appeal and is ripe for resolution of the remaining substantive issues. In contrast, the undersigned has stayed discovery in this case by separate order. And the time required for the presiding district judge to rule on this R&R and rule on the parties' cross-motions is likely to result in further procedural delays.

The fifth factor – the source of governing law -  falls under *both* state and federal constitutions. A claim premised on federal law *can* sometimes favor the exercise of federal jurisdiction, but must be considered in the context of other factors. Here, the existence of concurrent jurisdiction (the eighth factor) and Ohio's unquestioned ability to adequately address Plaintiff's due process rights (the sixth factor) seriously diminish the importance of the fifth factor, and overall support abstention. *See Romine*, 160 F.3d at 342; *see also Pritchard v. Dent Wizard International Corp.*, 275 F.Supp.2d at 912.

Considering all factors and weighing their relative importance, the undersigned is persuaded that this constitutes the "exceptional" case that warrants abstention. That said, "[t]he prevailing view in the Sixth Circuit is that cases finding *Colorado River* abstention

---

[12]*See Pritchard v. Dent Wizard International Corp.*, 275 F.Supp.2d 903, 911 (S.D. Ohio 2003) (holding that *Colorado River* factor "is akin to a first-to-file rule for actions that are first filed in state court and then filed in federal court.").

warranted should be stayed" rather than dismissed. *American Security & Audio Video Systems, Inc.*, 2023 WL 2956614, at *13 (citing *Bates v. Van Buren Tp*., 122 Fed. Appx. 803, 809, 2004 WL 2792483, at *5 (6th Cir. 2004)). Therefore, the undersigned recommends that Defendant's motion to dismiss Plaintiff's federal case be granted only in part.

## IV. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Defendants' motion to dismiss (Doc. 27) should be **GRANTED in part and DENIED in part** as follows:

   a. Plaintiff's equal protection claim should be DISMISSED for failure to state a claim, as should any construed due process claim based on Plaintiff's TSO classification or related "zero tolerance" policy;

   b. Plaintiff's remaining procedural due process claims under *Morrisey v. Brewer* should be STAYED pending final resolution of Plaintiff's parallel case in state court;

2. Plaintiff's cross-motion for judgment on the pleadings (Doc. 32) should be **DENIED;**

3. As the litigant who seeks to prosecute his due process claims in this Court, Plaintiff should be directed to file written notice and a motion to lift the stay within thirty (30) days after the referenced state court case has been closed.

> *s/Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TREMAIN HOGAN,                                          Case No: 3:23-cv-226

                        Plaintiff,                            Newman, J.
            v.                                              Bowman, M.J.

ANNETTE CHAMBERS SMITH, et al.,

                        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).